UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | CR 05-325 JRT/FLN |
| Plaintiff, | |
| v. | SUPPLEMENTAL REPORT & RECOMMENDATION |
| Otis Dair Burks, | |
| Defendant. | |

_____

On January 4, 2006, this Court recommended that Defendant's Motion to Suppress Statements be granted and that his Motion to Suppress Evidence as a Result of Unlawful Seizure be Denied.  After reviewing the objections to the Magistrate's Report & Recommendation, Judge Tunheim, in an ORDER dated, March 17, 2006, referred the matter back to the Magistrate Judge for additional proposed findings and recommendations.  Pursuant to that referral, the Court now makes this Supplemental Report & Recommendation.

Judge Tunheim expressly directs that the Magistrate Judge resolve the conflict between the testimony of Officer Pilcer and the testimony of the Defendant regarding the conversation that preceded the police entry into Defendant's hotel room. Judge Tunheim's Order also directs the Magistrate Judge to further consider the issue of whether there were exigent circumstances sufficient to allow a warrantless entry into the Defendant's hotel room, and to address whether the Defendant consented to a search of the hotel room.

## ADDITIONAL FINDINGS OF FACT

The Findings of Fact as set forth in the Court's January 4, 2006, Report & Recommendation are hereby incorporated by reference as if set forth fully herein.  The Court

1

now makes the following additional findings of fact:

Officers Blizek and Pilcer responded to a complaint from a Days Inn employee about the smell of marijuana emanating from Room 106. It was in the early morning hours of July 27, 2005. Standing outside the door to Room 106, the officers smelled for themselves the aroma of marijuana. Officer Blizek knocked upon the door.  It was after 1:30 in the morning. Someone inside of Room 106 responded by telling the officers to wait so that he could dress.  Initially, the occupant did not know the people knocking at the door were police officers, as Officer Blizek testified that she did not identify herself as a police officer. Defendant Otis Dair Burks opened the door to Room 106.  He then immediately learned that his visitors were police officers, as both Blizek and Pilcer were in uniform.  (Tr. 13, 33) A third police officer, named Nelson, was with them. (Tr. 18, 33)

The conflict between Defendant's testimony and that of the police officers centers on whether the police asked Defendant to step back after he opened the door.  Both Blizek and Pilcer deny directing the Defendant to "step back." (Tr.17, 31) According to their testimony, as soon as Defendant opened the door Pilcer immediately asked about the location of marijuana. Without waiting for an answer, Pilcer and Blizek "just entered the room," while Officer Nelson stood guard near the door.  (Tr. 12-13)  Defendant testified that one of the officers, after saying they smelled marijuana, asked him to step back, and that he did step back. (Tr. 56) All three witnesses agree that after he was asked about marijuana, Defendant did step back.

Both officers testified that they inferred from the Defendant's taking a step back after being asked about the marijuana, that they were being invited in.  Officer Blizek testified, in answer to a question about why she did not ask permission to enter, "By Mr. Burks' gesture, I

guess, and no objection by him, we just entered the room." She then described the gesture and testified that she believed Defendant was inviting her into the room. (Tr. 12-13) Officer Pilcer testified, "it felt like an inviting gesture into the room." (Tr. 33) The three witnesses also agree that after Defendant stepped back, the police officers entered his hotel room. (Tr. 12, 32, 56) It is undisputed that the officers did not have a warrant to enter the room. (Tr. 12, 32, 42) It is also undisputed that the officers never asked permission to enter the room. (Tr. 12, 17, 49)

      The Court expressly finds as a fact that neither Officer Pilcer nor Officer Blizek asked Defendant to step back. At the same time, the Court rejects their testimony that they reasonably believed they had been invited into the room. The Court expressly finds that neither of the officers ever asked permission to enter the room. Defendant never invited them in, or otherwise gave consent to their entry into his hotel room. Nothing about the Defendant's movement in response to Officer Pilcer's demand about the marijuana could reasonably be interpreted by the police as an invitation to enter the room. The evidence shows clearly that Defendant acquiesced to a show of authority, which consisted of three uniformed officers entering his hotel room after demanding to know the location of the marijuana they had clearly smelled.

      At no time during the encounter between the Defendant and the police did any officer advise Defendant of his rights under *Miranda v. Arizona*, 384 U. S. 436 (1966). When asked about this, Officer Pilcer testified, "He was never under arrest or in custody at that point." When asked if he was allowed to leave, Pilcer testified, "He never made any statements that he wanted to leave." Counsel for Defendant, replied, "That's not the point. He was not allowed to leave." Officer Pilcer repeated, "He never made any statements that he wanted to leave, so– " Finally, the Court asked, "Was he free to go? If he said, 'Officer, get the hell out of here, I'm going

home,' would you have let him go?" Officer Pilcer testified, "We would have left. At that time I would have secured the room to get a search warrant." (Tr. 53-54) The Court expressly disbelieves Officer Pilcer's testimony in this regard. As set forth more fully below, the Court concludes that Defendant was in custody and was not free to go from the moment the officers entered the room, to investigate their well founded suspicion that Defendant possessed marijuana.

## SUPPLEMENTAL CONCLUSIONS OF LAW

### A.   Defendant Was in Custody as Soon as the Police Entered His Room

With respect to the Defendant's Motion to Suppress Statements Judge Tunheim has expressly requested additional conclusions regarding the "overall tone of the encounter, and at what point custody began, if at all." The Court concludes that the tone of the encounter was confrontational and police dominated. A person is in custody within the meaning of *Miranda v. Arizona*, 384 US 436,479 (1966) whenever he is deprived of his "freedom of action in any significant way." The Eighth Circuit has elaborated upon the custody inquiry in *United States v. Griffin*, 922 F.2d 1343 (8th Cir. 1990).

> "In determining whether a suspect is 'in custody' at a particular time we examine the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody."

*Griffin*, 922 F2d at 1347. The test is an objective one and turns on the totality of the circumstances.

Here the Court concludes that a reasonable person in Defendant's position would have understood his situation to be one of custody as soon as Officers Blizek and Pilcer entered his

hotel room. At the time of the entry the police had probable cause to believe Defendant possessed marijuana. They smelled it as they stood outside of Defendant's hotel room, and they saw it after the door was opened sufficiently wide to enable them to see into the room. Without any preliminary conversation or pleasantries, the police officers immediately demanded to know where the marijuana was. Without waiting for an answer, two of the three police officers entered the room, while the third stood guard at the door.[1]

Under these circumstances, a reasonable person would immediately understand that their situation involved a significant deprivation of their freedom of action. As detailed in the original Report & Recommendation, at no time did any of the officers tell Defendant he was free to go, or that he was free to ask them to leave. That Defendant did not ask to leave in no way changes the Court's evaluation of this factor. Indeed, that he never asked to leave only serves to underscore the conclusion that he understood that was not an option available to him. Officer Pilcer's evasive answers to express questions about whether the Defendant was free to leave also strengthens the Court's conclusion that Defendant was in custody throughout the interrogation. His freedom of movement was restrained by two of the three officers whose position blocked his exit from the hotel room. Defendant did not contact the authorities, nor did he voluntarily acquiesce to official requests to respond to questions. His acquiescence, like the acquiescence of the defendant in *Johnson v. United States*, 333 US 10 91948)  was in response to the police assertion of authority to enter his room to investigate their suspicion that he possessed

---

[1] Although Officer Pilcer testified that the third officer was not "blocking the door" (Tr. 54) the Court expressly concludes that Officer Nelson's position "near the door" was designed to prevent the occupants of the room from leaving. To the extent Pilcer's carefully worded testimony is intended to convey a different conclusion, the Court expressly disbelieves it.

marijuana.[2] Though no strong arm tactics or deceptive stratagems were employed, the entire atmosphere was police dominated, by the presence of three uniformed police officers in the defendant's room, at 1:30 in the morning. Two of the officers stood near the door. At the end of the encounter, the Defendant was formally arrested.

Under these circumstances the Court concludes that the Defendant was in custody as soon as the Officers entered his hotel room in the early morning hours of July 27, 2005.

### B. The Police Entry Into The Room Was Unlawful

Judge Tunheim has also directed this Court to consider whether the defendant consented to the search of his room, and to further consider the question of whether exigent circumstances justified the police officers' decision to forego getting a search warrant to enter the room. Justice Jackson's oft quoted opinion in *Johnson v. United States,* 333 US 10 (1948) addressed a fact situation nearly identical to the situation the officers confronted here. In *Johnson*, police had information that someone was smoking opium in a hotel room. The police went to the hotel and

> "recognized at once a strong odor of burning opium which to them was distinctive and unmistakable. The odor led to Room 1. The officers did not know who was occupying that room. They knocked and a voice inside asked who was there. 'Lieutenant Belland,' was the reply. There was a slight delay, some 'shuffling or noise' in the room and then the defendant opened the door. The officer said, 'I want to talk to you a little bit.' She then, as he describes it, 'stepped back acquiescently and admitted us.'"

333 US 10, 12 (1948). After the room's occupant denied that there was any opium smell Lt.

---

[2]As discussed more fully below, in *Johnson,* the police went to a hotel room to investigate information that someone in the room was smoking opium. As they stood outside the room, the police themselves could smell the opium burning. In response to the officer's statement, "I want to talk to you a little bit," Johnson "stepped back acquiescently and admitted" the officers. The *Johnson* Court found that the entry under these circumstances was "granted in submission to authority." 333 US at 13.

6

Belland told her she was under arrest and searched the room. The police found opium and recently used , warm to the touch, smoking apparatus. With respect to the initial entry into the defendant's room, Justice Jackson found:

> "Entry to defendant's living quarters, which was the beginning of the search, was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right."

333 US at 13. Here, as in *Johnson*, it is clear that the officers who knocked upon the defendant's hotel room at 1:30 in the morning, did not have a warrant to enter the room. Nor did they ever ask for consent or permission to enter the room. Like the officers in *Johnson*, they immediately addressed the question of the illegal drugs they smelled. Here, the first words out of their mouth when the Defendant opened the door were, "where is the marijuana?" Like the defendant in *Johnson*, defendant here, "stepped back acquiescently and admitted" the officers. Here the officers, "just entered" in response to Defendant's acquiescent "gesture".(Tr. 12-13) Like the Supreme Court in *Johnson*, this Court expressly concludes as a matter of law that there was no consent to enter the Defendant's hotel room. Defendant here simply acquiesced to the officers' show of authority.

That leaves the question of whether there were exigent circumstances that justified an immediate entry into the room. In its original Report & Recommendation this Court concluded that there were exigent circumstances, and recommended that Defendant's motion to suppress the drugs found inside the room be denied. Upon further reflection, this Court now concludes that the circumstances known to the officers as they stood outside of Defendant's door did not involve an emergency sufficient to dispense with the requirement that they obtain a search

warrant before making the decision to enter the room.

In concluding in *Johnson* that the circumstances encountered by the police were not sufficient to dispense with the warrant requirement, the *Johnson* Court said:

> "There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to bypass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time will disappear. But they were not capable at any time of being reduced to possession for presentation to court. The evidence of their existence before the search was adequate and the testimony of the officers to that effect would not perish from the delay of getting a warrant."
>
> "If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required."

333 US at 14-15.[3]

---

[3]Here, unlike the record in *Johnson*, both officers testified that they entered the hotel room to prevent the destruction of evidence they knew was inside. As set forth more fully in the text, the gravity of the offense under investigation, simple possession of a user amount of marijuana, did not warrant making a warrantless entry. In any event, even if the threat of destruction did authorize an entry, the police would only have been justified in entering to secure the room while they sought a search warrant. In *United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000), the Eighth Circuit observed that the lawful entry into a hotel room based upon exigent circumstances does not authorize a search of the room. Once the occupants of the room were under control there was no reason to believe evidence was in danger of destruction and a search of the garment bag found inside the room was not authorized by the exigency that permitted the entry. In *Pierson*, the search of the bag was ultimately upheld because the bag did not belong to Pierson. Here, as in *Pierson*, once defendant and his companion were under control, the threat of evidence destruction evaporated. Officers here did more than simply secure the room. They interrogated the Defendant and wandered throughout the room looking for

More recently, the Supreme Court has concluded that, in deciding whether circumstances are sufficiently exigent to dispense with the requirement of a warrant, the seriousness of the offense at issue must be considered. In *Welsh v. Wisconsin*, 466 US 740 (1984), the Court addressed the warrantless entry into a man's house following a traffic accident which the police clearly had probable cause to believe was alcohol related. The Court observed that warrantless entries into the home are presumed to be unreasonable under the Fourth Amendment, and that the Government has the burden to demonstrate exigent circumstances that overcome the presumption.

> When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate. (Footnote omitted)

466 US at 750. After reviewing several lower court opinions addressing the exigent circumstances exception to the warrant requirement the *Welsh* Court held:

> We therefore conclude that the common-sense approach utilized by most lower courts is required by the Fourth Amendment prohibition on "unreasonable searches and seizures," and hold that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made. Moreover, although no exigency is created simply because there is probable cause to believe that a serious crime has been committed, . . . application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the kind at issue in this case, has been committed.

---

whatever else might be in plain view, which is how they discovered the drugs in Defendant's pants pocket that are the subject of the instant motion. As the officers' search here exceeded the scope of the entry permitted by any exigency that might have existed, the evidence found in the Defendant's pants pocket must be suppressed, even if exigent circumstances authorized the initial entry into Defendant's room.

The Court concluded, "To allow a warrantless home entry on these facts would be to approve unreasonable police behavior that the principles of the Fourth Amendment will not sanction." *Welsh v. Wisconsin*, 466 US 740, 753-54 (1984). In reaching this conclusion, the Court rejected the Government's argument that entry was necessary to preserve evidence of the driver's blood alcohol content.

That the warrantless entry at issue in *Welsh* was for a traffic offense, punishable by only a fine, does not lessen its applicability to the facts here. As the officers here stood outside Defendant's door, and observed a user quantity of marijuana on the table next to defendant's bed, they had probable cause to believe only that defendant possessed a small amount of marijuana, a misdemeanor under both Federal and Minnesota law. Upon further reflection, this Court now concludes that to permit a warrantless entry under the totality of these circumstances, "would be to approve unreasonable police behavior that the principles of the Fourth Amendment will not sanction." 466 at 754.

The officers here entered the Defendant's room without a warrant and without consent. Under these circumstances, this Court now concludes that the entry was not justified by exigent circumstances. The entry, therefore, violated the Fourth Amendment and the evidence discovered inside must, therefore, be suppressed.

## **RECOMMENDATION**

For all of the foregoing reasons, this Court now recommends that Defendant's Motions to Suppress Statements [#17] and to Suppress Evidence as a Result of Unlawful Search and Seizure [#20] be **GRANTED.**

DATED: March 29, 2006.                    s/ *Franklin L. Noel*
                                          FRANKLIN L. NOEL
                                          United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **April 14, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.